IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| **KOWANNA M. CHASE,** | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: CBD-13-1385 |
| | * | |
| **CAROLYN W. COLVIN,**<br>Acting Commissioner,<br>Social Security Administration, | * | |
| | * | |
| Defendant. | * | |

******

## MEMORANDUM OPINION

Kowana Chase ("Plaintiff") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's claims for a period of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") (ECF No. 17) and Defendant's Motion for Summary Judgment ("Defendant's Motion") (ECF No. 19). The Court has reviewed the motions, related memoranda, and applicable law. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons presented below, the Court hereby DENIES Plaintiff's Motion, DENIES Defendant's Motion, and REMANDS this matter to the Social Security Administration for further proceedings consistent with this opinion.

### I.   Procedural Background

Plaintiff filed her application for DIB on March 7, 2007 and claimed disability from the onset date of August 1, 2005 through the date last insured of December 31, 2009, as a result of the late effects of musculoskeketal connective tissue injury, status post cervical fusion, and

obesity.  R. at 13–14, 17, 137–40, 168.  The Commissioner denied Plaintiff's claim on first review on July 12, 2007 and upon reconsideration on January 10, 2008.  R. at 97–99, 104–05.  Plaintiff appeared and testified at a hearing held on December 15, 2009 before an Administrative Law Judge ("ALJ").  R. at 43–60.  On January 6, 2010, the ALJ issued a written decision concluding Plaintiff was not entitled to DIB payments.  R. at 79–88.  Plaintiff requested review of the ALJ's decision by the Appeals Council, which vacated and remanded Plaintiff's claim for review and a new hearing.  R. at 91–93.  A second hearing was held before an ALJ on September 13, 2011, and the ALJ issued a decision denying Plaintiff's claim on October 19, 2011.  R. at 10–26, 61–75.  On March 15, 2013, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision final and appealable.  R. at 1–4.

## II.     Standard of Review

On appeal, the Court has the power to affirm, modify, or reverse the decision of the ALJ "with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g) (2012).  The Court must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the correct law.  42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); s*ee also Russell v. Commissioner of Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal quotation marks omitted); *see also Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of

more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented below *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456; *Schweiker*, 795 F.2d at 345. The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d at 1456. If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The Court shall find a person legally disabled if she is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a) (2014). The Code of Federal Regulations outlines a sequential, five-step process that the Commissioner must follow to determine if a plaintiff meets this definition:

    Step 1)  Determine whether the plaintiff is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If she is doing such activity, she is not disabled. If she is not doing such activity, proceed to step two.

    Step 2)  Determine whether the plaintiff has a "severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If she does not have such impairment or combination of impairments, she is not disabled. If she does meet these requirements, proceed to step three.

    Step 3)  Determine whether the plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the

           duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If she does have such impairment, she is disabled. If she does not, proceed to step four.

Step 4)    Determine whether the plaintiff retains the "residual functional capacity" to perform "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If she can perform such work, she is not disabled. If she cannot, proceed to step five.

Step 5)    Determine whether the plaintiff can perform other work, considering her residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If she can perform other work, she is not disabled. If she cannot, she is disabled.

Plaintiff has the burden to prove that she is disabled at steps one through four, and Defendant has the burden to prove that Plaintiff is not disabled at step five. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

## III.    Analysis

In the ALJ's October 19, 2011 decision, he evaluated Plaintiff's claims using the five-step sequential process set forth in 20 C.F.R. § 404.1520. R. at 16–26. At the first step, the ALJ determined that Plaintiff did not engage in substantial gainful activity during the claim period from her alleged onset date through her date last insured. R. at 17. At the second step, the ALJ determined that Plaintiff suffered from severe impairments due to the late effects of musculoskeketal connective tissue injury, status post cervical fusion, and obesity. R. at 17–18. At the third step, the ALJ determined that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments." R. at 18–19. Before proceeding to step four of the sequential evaluation, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light unskilled work with an option to sit/stand at will and which accommodates her limited dominant hand usage. R. at 19–24. At step four, the ALJ compared the physical and mental demands of Plaintiff's past relevant work as a store clerk with her assessed RFC, and found that Plaintiff was not capable of

4

performing her past relevant work.  R. at 24.  At step five, the ALJ compared Plaintiff's RFC, age, education, and work experience to the demands required of other work in the national economy, and found that Plaintiff was capable of successfully adjusting to other work such as router, counter clerk, and gate guard.  R. at 4–26.  As a result, the ALJ concluded that Plaintiff "was not under a disability, as defined in the Social Security Act," during the claim period from the alleged onset date of August 1, 2005 through the date last insured of December 31, 2009.  R. at 26.

On appeal, Plaintiff argues that the Court should reverse the Commissioner's decision or remand the case for additional consideration and evaluation of Plaintiff's conditions.  Pl. Mot. 1.  Plaintiff alleges the ALJ (1) improperly discounted new and material evidence, (2) neglected to consider all Plaintiff's impairments in his RFC determination, and (3) failed to give the opinion of Plaintiff's treating physician appropriate deference.  *Id.* at 2.  For the reasons set forth below, both the Plaintiff's Motion and the Defendant's Motion are denied and the matter is remanded for further proceedings consistent with this opinion.

### A. Plaintiff Has Met Her Burden of Proving the Requirements for New and Material Evidence

Plaintiff alleges that treatment records from Dr. Patrick Sheehan constitute new and material evidence which warrant remand.  Pl. Mot. 3–4.  Defendant argues that Plaintiff failed to meet her burden of demonstrating either the relevance of Dr. Sheehan's report or how the ALJ's decision might have been different had this evidence been before him.  Dr. Sheehan first saw Plaintiff on May 1, 2013, in order evaluate Plaintiff for her workers' compensation case.  Pl. Mot. Ex. 1 at 2.  Dr. Sheehan's treatment notes support a finding that Plaintiff fits the criteria for affective disorder as outlined in the regulations, and his evaluation concludes that Plaintiff's

work accident in March 2002 was the proximate cause of her depressive disorder and panic disorder.  Pl. Mot. 4, Ex. 1 at 2.

A remand is warranted "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  *See* 42 U.S.C. § 405(g).  In order to justify a remand to consider newly submitted medical evidence, the evidence must meet the requirements of 42 U.S.C. § 405(g) and *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985), *superseded by statute* 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dept. Health & Human Servs.*, 925 F.2d 769 (4th Cir. 1991).  A reviewing court may remand a Social Security case to the Secretary on the basis of newly discovered evidence if the following prerequisites are met: (1) the evidence must be relevant to the determination of disability at the time the application was first filed; (2) the evidence must be material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before her; (3) there must be good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant must make at least a general showing of the nature of the new evidence to the reviewing court.  *Miller v. Barnhart*, 64 F. App'x 858, 859–60 (4th Cir. 2003) (citing *Borders*, 777 F.2d 954, 955 (4th Cir. 1985)).  Plaintiff bears the burden of proving that these requirements are satisfied.  *Brown v. Astrue*, No. TMD-11-1063, 2013 WL 360259, at *3 (D. Md. Jan. 29, 2013).

Plaintiff has made the requisite showing for all four prerequisites of the *Borders* test.  First, Plaintiff demonstrates that the evidence was relevant to the disability determination at the time of filing by summarizing Dr. Sheehan's findings.  Pl. Mot. 4.  Second, it is possible that the evidence might reasonably have changed the Commissioner's decision, because Dr. Sheehan was a treating physician entitled to deference.  *Id.*; *see infra* Part III.C.1 (discussing the appropriate

weight to be attributed to the opinion of a treating physician).  Third, Plaintiff met the "good cause" requirement of § 405(g) by noting that "Dr. Sheehan's records were not available at the time of the ALJ decision."  Pl. Mot. 4.  Fourth, Plaintiff accounted for the nature of the new evidence by providing copies of Dr. Sheehan's findings to the Court.  Pl. Mot. Ex 1, 2.  Where, as here, Plaintiff has produced new and material evidence that satisfies the *Borders* test, the case should be remanded for a new administrative determination.

### B.  ALJ Neglected to Consider All Plaintiff's Impairments in RFC Determination

Plaintiff maintains that the ALJ erred at step four of the sequential analysis and inaccurately assessed Plaintiff's RFC, by failing to consider all of Plaintiff's relevant impairments such as her carpal tunnel syndrome, second cervical fusion surgery, or headaches.  Defendant contends that the ALJ's decision is supported by substantial evidence and that, where he may have erred, it was harmless.  Pl. Mot. 4–5.

A claimant's residual functional capacity is an assessment regarding what she can do despite her physical or mental limitations.  *See* SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996); 20 C.F.R. §§ 404.1546(c), 416.946(c) (2014).  To determine a claimant's RFC, the ALJ will consider all of her impairments, including those that are not severe.  20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) (2014).  The RFC assessment is based on all the relevant evidence in the record.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  In determining a claimant's RFC, the ALJ must identify her functional limitations or restrictions and assess the claimant's work-related abilities on a function-by-function basis.  SSR 96-8p, 1996 WL 374184, at *3.  The ALJ's assessment must include a narrative discussion detailing how the evidence in the record supports his or her conclusion.  *Id.* at 7; *see also Finlay v. Astrue*, No. SAG-10-2020, 2012 WL 5267084, at *1 (D. Md. Oct. 19, 2012).

7

The ALJ appropriately addressed the records pertaining to the alleged carpal tunnel conditions, committed harmless error regarding Plaintiff's second cervical fusion, and committed remandable error regarding Plaintiff's allegation of debilitating headaches.  First, the ALJ not only addressed Plaintiff's carpal tunnel condition throughout his decision, specifically regarding bilateral strength in her upper extremities and a normal range of wrist motion, but actually found that Plaintiff had limited dominant hand usage.  R. at 18–21.  This assessment is consistent with x-rays of Plaintiff's hands from September of 2008.  R. at 215.  Second, the ALJ did not specifically articulate that Plaintiff had undergone two fusion surgeries, but instead spoke generally about the effect of cervical fusion surgery on Plaintiff's recovery.  Nonetheless, Plaintiff failed to demonstrate prejudice resulting from the ALJ's error.  In the absence of any argument that the ALJ's failure to specifically mention both surgeries could have affected the outcome of the ALJ's analysis, any error in failing to consider the second fusion surgery is harmless error.  *See, e.g.*, *Wilson-Brown v. Colvin*, No. TMD-12-1112, 2013 WL 5272939, at *3 (D. Md. Sept. 16, 2013); *Costley v. Commissioner*, No. SAG-12-2670, 2013 WL 4836102, at *1 (D. Md. Sept. 9, 2013); *Parker v. Colvin*, No. JKS-11-2170, 2013 WL 4551821, at *3 (D. Md. Aug. 27, 2013).

Finally, the Court cannot find harmless error where the ALJ neglects to address an impairment that previous reports found important enough to categorize as severe.  The ALJ's first decision on January 6, 2010, listed headaches as a severe impairment supported by documentation.  R. at 49–51, 64, 67–68, 84, 212, 216.  However, the ALJ's second decision on October 19, 2011, stated that Plaintiff's impairments include only "musculoskeletal connective tissue injury, status post cervical fusion, and obesity."  R. at 17.  Plaintiff's debilitating headaches are not addressed in the second assessment at all, either as a severe or non-severe

impairment. R. at 13–26. By failing to consider all of Plaintiff's impairments when considering her ability to work, the ALJ based his determination on incomplete and inaccurate information. The case, therefore, should be remanded for a new administrative determination.

### C. ALJ Attributed Appropriate Weight to Treating Physician Evidence and Properly Evaluated Evidence in Record

Plaintiff asserts that the ALJ erred at step four of the sequential analysis by not attributing appropriate deference to the opinion of Plaintiff's treating physician and by not properly evaluating the evidence in the record. Pl. Mot. 5–7. First, Plaintiff contends the ALJ violated the "treating physician rule" by disregarding the opinion of Plaintiff's treating physician Dr. Leonid Selya. Pl. Mot. 6. Second, Plaintiff alleges the ALJ erroneously based his credibility determination on his RFC determination instead of the evidence in the record. Pl. Mot. 6–7. Third, Plaintiff challenges the ALJ's sufficiency of explanation, claiming he used only boilerplate language to support his conclusions. *Id*. The ALJ did not err on any challenge asserted.

#### *1. ALJ Attributed Appropriate Weight to Opinion of Plaintiff's Treating Physician*

Plaintiff alleges that the ALJ improperly weighed the medical opinion evidence of Plaintiff's treating physician Dr. Selya in reaching his conclusion. Pl. Mot. 6. Plaintiff cites this Court's decision in *Thomas v. Astrue*, No. CBD-11-2960, 2012 WL 5363448 (D. Md. Oct. 26, 2012), for the proposition that "[a] treating physician's opinion should be given complete deference absent contradicting opinions, and significant weight even where contradicted." Pl. Mot. 6. This is a bold mischaracterization of the Court's holding, which simply states "good reasons" are required to reject the opinion of a treating physician. *Thomas*, 2012 WL 5363448, at *5 (citing *Russell v. Comm'r of Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011)). The Court

9

finds that the ALJ's analysis provided good reason in compliance with all relevant rulings and regulations.

To determine the weight assigned to medical opinions, the Commissioner considers six factors: (1) the examining relationship between the source and the claimant; (2) the length, nature, and extent of the treatment relationship between the source and the claimant; (3) the supportability of the source's opinions; (4) the consistency of the source's opinions with the record as a whole; (5) any specialized expertise of the source; and (6) other factors which the claimant may bring to the Commissioner's attention. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (2014). The regulations state a preference for medical sources who have a treatment relationship with the claimant, because they are "most able to provide a detailed, longitudinal picture" and "may bring a unique perspective to the medical evidence." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When the adjudicator does not give controlling weight to a treating source, that decision must be justified in the notice of decision by an application of the factors listed above. *Id.* For medical sources who have not examined or treated the claimant, the adjudicator must assign weight depending on the degree to which they provide supporting explanations for their opinions. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).

Fourth Circuit precedent does not require that a treating physician's testimony be given controlling weight. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); *see also Craig*, 76 F.3d at 590 ("By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight"). The Commissioner must give controlling weight to an opinion from a treating source if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. §§

404.1527(c)(2), 416.927(c)(2) (2014); *see also Craig*, 76 F.3d at 590.  Certain determinations, however, are always reserved to the Commissioner because they are administrative findings and are dispositive of the case.  20 C.F.R. §§ 404.1527(d), 416.927(d) (2014).  These include opinions that a claimant is disabled, whether an impairment meets or equals a listing, a claimant's RFC, and the application of vocational factors.  *Id*.; *see also* SSR 96-5p, 1996 WL 374183, *2 (July 2, 1996) (stating that giving controlling weight to such opinions "would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled").

According to Dr. Selya's records, Plaintiff began to exhibit pain in her neck and numbness down her left arm as a result of a slip and fall in 2002. R. at 313.  Symptoms persisted and after failing to improve with conservative management, including physical therapy and nonsterodial anti-inflammatory drugs ("NSAIDs"), Plaintiff underwent anterior decompression and anterior fusion surgery at C5-C6.  *Id.*  The surgery was unsuccessful and Plaintiff's pain worsened.  *Id.*  On May 3, 2007, Dr. Selya concluded Plaintiff was "totally disabled" and would "not be able to enjoy any productive employment considering the severity of pain, loss of cervical motions, and risk of addrevation of the pseudoarthrosis."  R. at 310.  Contrariwise, on September 13, 2007 Dr. Selya also concluded that Plaintiff was able to walk with upright gait with some apprehension and revealed only mild cervical and sacrococcygeal junctional pain.  R. at 307.   On November 13, 2007, Plaintiff underwent a second surgery, posterior cervical fusion at C5-C7.  R. at 314.  In Plaintiff's first postsurgical follow-up on November 29, 2007, Dr. Selya reported Plaintiff was "doing reasonably well" and exhibited improvement in her upper extremities and in the severity of her back pain.  R. at 306.

The ALJ determined that Dr. Selya's opinion that Plaintiff was "totally disabled" before the second surgery was not entitled to controlling weight because it was not supported by medical evidence in the record and was inconsistent with other substantial evidence in the case record. *See Pusey v. Astrue*, No. SKG-09-3410, 2011 WL 666046, at *7 (D. Md. Feb. 14, 2011). The ALJ's bolstered his statement regarding the inconsistencies in Dr. Selya's assessment with factual comparisons. First, the ALJ noted contradictions between Dr. Selya's opinion and that of examining physician Dr. Ajit Kurup. Dr. Selya concluded in his September 13, 2007 assessment that Plaintiff could not sit straight, could not tolerate toe and heel walking, and would "not be able to enjoy any productive employment." R. at 307. Dr. Kurup reported in his June 26, 2007 assessment that Plaintiff had mild to moderate pain, normal range of motion, no significant problems with bending and flexion, normal motor strength and deep reflexes, and no difficulty getting on and off the examination table. R. at 20; 291–97. Dr. Kurup stated that Plaintiff had mild limitations of the cervical spine and neck, but "no significant limitations" that would prevent Plaintiff from performing work-related activities. *Id.*

Second, the ALJ identified instances where Dr. Selya's own treatment records were inconsistent with his finding that Plaintiff was disabled. R. at 23–24, 306–08. Dr. Selya's treatment notes on September 13, 2007 indicated that Plaintiff was able to walk with upright gait with some apprehension and revealed only mild cervical and sacrococcygeal junctional pain. R. at 307. At that time, Dr. Selya recommended only "[a]ggressive physical therapy," NSAIDs, a sitting doughnut, and muscle relaxants. R. at 24, 307. The ALJ properly concluded that Dr. Selya's statement that Plaintiff was "totally disabled" on May 3, 2007, only four months prior and before her second surgery, was inconsistent with the record and Dr. Selya's own factual comparisons. R. at 23–24, 310.

Finally, the ALJ noted that Dr. Selya's statement that Plaintiff was "totally disabled" on May 3, 2007 was a determination reserved to the Commissioner as an administrative finding dispositive of the case. 20 C.F.R. §§ 404.1527(e), 416.927(e).

Plaintiff has not identified any evidence in the record, beyond her own subjective complaints, that would indicate she was disabled after the second surgery on November 13, 2007, including the opinion of her treating physician Dr. Selya. *See* R. at 306 (stating that Plaintiff walked with a normal gait, displayed normal upper and lower extremity strength, and experienced only mild to moderate pain in her cervical spine during her first postsurgical follow-up visit after C5-C7 posterior cervical fusion). Furthermore, the Court is satisfied that the ALJ's decision to accord "little weight" to Dr. Selya's opinion, that Plaintiff was "totally disabled" before her second surgery, is supported by substantial evidence. Though a more thorough analysis may be required in some cases, Plaintiff fails to demonstrate how any additional discussion could have produced a different result. Thus, it appears that the ALJ did not err, and if he did, the error was harmless. *See Thornsberry v. Astrue*, No. 4:08-4075-HMH-TER, 2010 WL 146483, at *5 (D.S.C. Jan.12, 2010) (finding that "while the ALJ could have been more explicit" in his discussion of the combined effect of the plaintiff's multiple impairments, his overall findings adequately evaluated the plaintiff's impairments, and thus any error in failing to use explicit language was "harmless"); *Robinson v. Astrue*, No. 2:10-185-DCN, 2011 WL 4368396, at *6 (D.S.C. Sept.19, 2011); *Williams v. Astrue*, No. 4:10-CV-2966-TER, 2012 WL 694038, at *5 (D.S.C. Mar. 5, 2012).

    2. *ALJ Properly Made Credibility Determination Based on the Evidence in the Record*

Plaintiff contends that the ALJ failed to support his credibility determination with substantial evidence, instead basing his decision on an erroneously predetermined RFC.

"[S]ubjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Johnson v. Barnhart*, 434 F.3d 650, 657 (4th Cir. 2005) (citing *Craig*, 76 F.3d at 591); *see also* 20 C.F.R. §§ 404.1529(b), 416.929(b) (2014). In evaluating disability claims, the Commissioner "is required to make credibility determinations—and therefore sometimes must make negative determinations—about allegations of pain or other nonexertional disabilities." *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

Contrary to Plaintiff's assertions, the ALJ thoroughly reviewed the evidence to determine her credibility and subjective allegations, dedicating six pages of his 14-page decision to the topic, and determined that her statements concerning her impairments and their impact on her ability to work were not entirely credible in light of the overall evidence of record. *See* R. at 19–24. Importantly, the ALJ noted that Dr. Ajit Kurup reported Plaintiff was in no acute distress and had no significant limitations, that Dr. Leonid Selya stated Plaintiff was able to walk with a normal gait and displayed normal muscle strength, that Dr. Michael Franchetti noted Plaintiff was under no active care for her injuries and experienced only mild limitations in her range of motion in her spine and shoulder, and that Dr. William Lander diagnosed Plaintiff with having mild cervical radiculopathy and mild bilateral carpal tunnel syndrome. R. at 20–21. The ALJ determined Plaintiff to be "less than credible" because the medical evidence of record showed that her medical condition was improving and that she did not exhibit her alleged symptoms to the degree that would limit her ability to perform work-related activities. R. at 21. The ALJ's narrative includes substantial evidence to support his adverse credibility finding, thus remand is not warranted on this basis.

*3. ALJ Sufficiently Supported Template Language with Evidence from the Record*

Plaintiff contends that the ALJ used "boilerplate language" to support his conclusions, thus failing to support his decision "in any meaningful or reviewable way." R. at 6–7. Plaintiff also argues that the ALJ applied the incorrect legal standard in weighing her credibility because the decision contains template language criticized by the United States Court of Appeals for the Seventh Circuit in *Bjornson v. Astrue*, 671 F.3d 640, 645–46 (7th Cir. 2012). R. at 6–7. The Court need not reach this second issue and the Seventh Circuit's interpretation of template language, because the Fourth Circuit and this Court have ruled on this issue.

In assessing Plaintiff's RFC, an ALJ performs a function-by-function assessment and must provide a narrative discussion "describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *3, 7 (July 2, 1996). The Administrative Procedure Act ("APA"), which applies to all federal administrative agencies, requires ALJs to state their "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record." 5 U.S.C. § 557(c)(3)(A) (2012); *see also Brown ex rel. McCurdy v. Apfel*, 11 F. App'x 58, 59 (4th Cir. 2001) (stating that the Social Security Act and the APA require ALJs to "include an explanation of what evidence, or inferences drawn therefrom, were relied on in arriving at a decision"). However, "'an RFC assessment is sufficient if it includes a narrative discussion of the claimant's symptoms and medical source opinions.'" *Bowers v. Comm'r, Soc. Sec. Admin.*, No. SAG-11-1445, 2013 WL 150023, at *2 (D. Md. Jan. 11, 2013) (internal quotation marks omitted).

A review of the ALJ's decision, particularly the three pages of analysis regarding Plaintiff's credibility, demonstrates his compliance with the regulations. *See* R. at 20–23. The

ALJ did not rely on the template language alone to explain why he found Plaintiff's subjective complaints less than fully credible, but thoroughly discussed the lack of objective medical evidence to support Plaintiff's allegations of disabling neck and shoulder pain. R. at 20–21. The ALJ specified which statements were credible and which were not, and explained why by reference to all pertinent factors set forth in the regulations. When analyzed in context, it is evident that the ALJ included sufficient explanatory language after each use of template language to overcome any claims of vagueness. *See* Pl. Mot. 6; R. at 23. The use of template language in the ALJ's adverse credibility determination is innocuous when, as here, the language is followed by an explanation for rejecting the claimant's testimony.

## IV. Conclusion

Based on the foregoing, the Court DENIES Plaintiff's Motion and DENIES Defendant's Motion and REMANDS this matter to the Social Security Administration for further proceedings consistent with this opinion.

May 29, 2014                                                                 /s/
                                                                             Charles B. Day
                                                                             United States Magistrate Judge

CBD/slr